UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 06-2365-JJO

UNITED STATES OF AMERICA

vs.

JORGE GINART, LUIS MONTERO
and
WILFREDO CARDENAS,

                Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 1999?  ___ Yes  _X_ No
   If yes, was it pending in the Central Region?
   ___ Yes ___ No

2. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 2003?  ___ Yes  _X_ No

3. Did this matter originate from a matter pending in the Narcotics Section (Miami) of the United States Attorney's Office prior to May 18, 2003?  ___ Yes  _X_ No

4. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ___ Yes  _X_ No

                          Respectfully submitted,

                          R. ALEXANDER ACOSTA
                          UNITED STATES ATTORNEY

BY:     [signature]
        KARLYN J. HUNTER
        ASSISTANT UNITED STATES ATTORNEY
        Court Number A5500809
        99 N. E. 4th Street
        Miami, Florida  33132-2111
        TEL (305) 961-9085
        FAX (305) 530-7976

# United States District Court

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

V.

JORGE GINART, LUIS MONTERO and
WILFREDO CARDENAS

**CRIMINAL COMPLAINT**

CASE NUMBER: 06-2365-JJO

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about April 3, 2006, in Miami-Dade County, in the Southern District of Florida, the defendants, JORGE GINART, LUIS MONTERO and WILFREDO CARDENAS, did knowingly and intentionally combine, conspire, confederate, and agree with each other to possess with the intent to distribute a Schedule II controlled substance, that is, a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent with the United States Immigration and Customs Enforcement and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

_____
ADAM LOWTHER, SPECIAL AGENT
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

Sworn to before me, and subscribed in my presence,

APRIL 4, 2006            at Miami, Florida
Date                                                City and State

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                  Signature of Judicial Officer

I, Adam Lowther being duly sworn, depose and state the following:

1.      I am a Special Agent with United States Immigration and Customs Enforcement (ICE) in Miami, Florida, and I am assigned to the Marine Investigations Unit. I have been employed as a federal criminal investigator since 1997. This affidavit is being submitted in support of a Criminal Complaint against JORGE GINART (hereinafter "GINART"), Luis MONTERO (hereinafter "MONTERO"), and Wilfredo CARDENAS (hereinafter "CARDENAS"). As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause to support the Criminal Complaint.

2.      On April 3, 2006, at approximately 4:15 PM, United States Customs and Border Protection (CBP) Marine Interdiction Agents detected two vessels within seventy-five yards from one another, moving in tandem, six miles off shore of Key Biscayne, Florida. The vessels were heading northwest towards Government Cut off the shore of Miami Beach, Florida. The two vessels appeared to be traveling together at a high rate of speed of approximately forty-five knots.

3.      At approximately 4:25 PM, three CBP officers, who were in one clearly marked law enforcement vessel, illuminated the vessel's blue lights approximately three-quarters of a mile away from the vessels in an attempt to initiate a stop and boarding of the vessels. As CBP approached the lead vessel (bearing Florida Registration number FL 1824 KK), the driver looked at the CBP officers and immediately steered his vessel directly towards the marked CBP vessel. This prompted the CBP to take evasive actions to avoid a collision with this vessel. The CBP vessel continued to pursue the first vessel heading in a northern direction, as the second

vessel continued west at high rate of speed. CBP ultimately stopped the first vessel after approximately a ten-minute chase. The second vessel (bearing Florida Registration number FL 0195 GW) absconded from the area.

4. CBP boarded the lead vessel, bearing Florida Registration Number FL 1824 KK; it was a 25 foot Condor with twin Mercury Outboards. The driver was identified as Jorge Luis GINART. A pat down search of GINART was conducted, which resulted in the seizure of a pair of binoculars as well as U.S. and Bahamian currency, which were all found in his pants pockets.

5. Approximately one hour after GINART was apprehended, ICE agents received information from employees at the Rickenbacker Marina located in Key Biscayne, Florida, that a suspicious vessel was left abandoned at the marina. ICE agents went to the marina to interview the employees and to identify the vessel. ICE agents and the aforementioned CBP officers respond to the marina and identified the abandoned vessel as being the absconding vessel from the earlier pursuit. During the ICE agents' interviews of the marina employees, the employees stated that they observed an individual depart the abandoned vessel with two duffle bags and then nervously sought their assistance in obtaining a taxicab. The marina employees also stated that the individual left the vessel keys with them and told them that someone would arrive later to retrieve the vessel. The employees provided ICE agents with the name and telephone number of the taxicab service as well the keys and the location of the abandoned vessel.

6. The taxicab service provided ICE agents with the address to which he delivered the individual that had departed the marina earlier. ICE agents and the

aforementioned CBP officers arrived at this address, 750 NW Terrace, Miami, Florida. A security officer at the apartment building told ICE agents that she saw an individual from apartment 1107 arrive with duffle bags. ICE Agents knocked at the residence and received consent to search the apartment. Consent to search the apartment was given by the lessee, WILFREDO MONTERO. Inside the apartment ICE agents found two duffle bags, located inside a closet, which contained approximately 24 kilograms of a substance that field-tested positive for the presence of cocaine. Additionally, another kilogram was located inside a wardrobe. The residents of the apartment, Wilfredo CARDENAS and Luis MONTERO, were the placed under arrested.

9.     CARDENAS was read his Miranda Rights in the Spanish language, which he understood and waived voluntarily. CARDENAS stated MONTERO, his roommate, informed him that he intended to take a trip one evening, approximately three to four days ago, but did not elaborate. CARDENAS did not see MONTERO until he returned from his trip. He further stated that on April 3, 2006, MONTERO called CARDENAS from Key Biscayne and told him to leave the side door of the apartment complex open and to be waiting for him there. CARDENAS stated that did as MONTERO asked and waited for him to arrive. According to CARDENAS, approximately 15 minutes later MONTERO arrived in a taxicab with two bags in his hand. CARDENAS grabbed one bag and MONTERO carried the other up to their apartment, apartment 1107.

9.     CARDENAS further elaborated that he and MONTERO went to their apartment and secured the bags inside. CARDENAS then asked MONTERO what was inside the bag, which MONTERO admitted was "Perico," Spanish slang for cocaine.

MONTERO dumped the contents of the bags onto their bed, which happened to be approximately 25 kilograms of cocaine.

9. CARDENAS stated that MONTERO cut into one of the cocaine bricks, placed some of the powder inside a small glass jar and wrapped the rest of the brick in a plastic bag and placed it inside a wardrobe in their apartment. MONTERO then placed the remaining cocaine bricks back inside the bag and hide the two bags inside a closet inside the apartment.

10. MONTERO was read his Miranda Rights in the Spanish Language, which he understood and waived voluntarily. MONTERO stated he was approached by the operator of the first vessel, GINART, whom he referred to as "AMIGO." MONTERO stated that "AMIGO" was the individual he had followed back from the Bahamas in a separate boat when CBP initiated a stop of the two vessels.

12. According to MONTERO, AMIGO offered to pay him $1,000.00 to drive a boat from Bimini, Bahamas to Miami, Florida, and on March 31, 2006, "AMIGO" picked MONTERO up at approximately 5:00 AM and the two departed to Bimini, Bahamas on a single boat. CARDENAS further stated that they arrived in Bimini at approximately 11:00 AM. On April 3, 2006, at approximately 3:00 PM, "AMIGO" informed MONTERO that he would operate the second vessel and follow him back to Miami, Florida.

13. According to MONTERO, he was suppose to have met with an unknown individual at the Rusty Pelican Restaurant, Key Biscayne, Florida, but when he arrived no one was there to great him. As a result, MONTERO grab the two bags that he had smuggled into the U.S. and called a taxicab to take him to his apartment that he shared with CARDENAS.

16. According to MONTERO, when he arrived at the apartment he shared with CARDENAS, he cut open one of the cocaine brick, placed some of the powder in a glass jar and the place the remainder of the brick in his wardrobe closet. MONTERO admitted that he is a crack cocaine addict and he intended to steal some of the cocaine that he had smuggled into the U.S.

17. Based on the foregoing facts, I submit that there is probable cause to believe that GINART, MONTERO, and CARDENAS knowingly possessed with intent to distribute cocaine in violation of Title 21, United States Code, Section 841 and conspired with intent to distribute cocaine in violation of Title 21, United States Code, Section 846.

FURTHER AFFIANT SAYETH NOT

*[signature]*
Greg Lowther, Special Agent
Immigration and Customs Enforcement

Subscribed and sworn to before me
this 4th day of April, 2006

*[signature]*
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE